UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                :
UNITED STATES OF AMERICA                        :
                                                :
   - against -                                  :     16-CR-00234 (S-2) (BMC)
                                                :
LOUIS F. PETROSSI,                              :
                                                :
                                                :
                Defendant.                      :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LOUIS F. PETROSSI'S MOTION TO PRECLUDE THE ADMISSION INTO EVIDENCE AT TRIAL OF <u>GOVERNMENT EXHIBIT 600 AND GOVERNMENT EXHIBITS 615-620</u>

PETRILLO KLEIN & BOXER LLP
Nelson A. Boxer
Jack Genberg
655 Third Avenue, 22nd Floor
New York, NY 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
Attorneys for Louis F. Petrossi

April 5, 2017

Defendant Louis Petrossi respectfully moves *in limine* to preclude the introduction into evidence of Government Exhibit 600 (FINRA Central Registration Depository ("CRD") Report for Mr. Petrossi), and Government Exhibits 615-620 (study outlines for various National Association of Securities Dealers' Exams). Copies of these exhibits are attached hereto as Exhibits A through G.

Mr. Petrossi was last a registered financial representative in approximately 1992; he sat for NASD exams in 1981, 1982, and 1985. The Second Superseding Indictment does not allege that Mr. Petrossi was a financial representative for any investors in SunSi Energies or ForceField Energy. These documents are inadmissible because they are irrelevant, lack evidentiary foundation, and if admitted would cause unfair prejudice to Mr. Petrossi. Moreover, the government's attempt to use Mr. Petrossi's employment history and CRD Report as 404(b) evidence is untimely and improper propensity evidence.

**I.    FACTS**

The Financial Industry Regulatory Authority ("FINRA") (formerly known until 2007 as the National Association of Securities Dealers ("NASD")) is a self-regulatory organization that regulates its member firms in the financial industry and their associated employees. FINRA administers examinations that securities professionals must pass to become registered with FINRA.

FINRA also maintains a central database of employment and disclosure history for individuals that are, or previously have been, registered with FINRA. CRD reports for a registered individual provide personal information, such as age, place of birth, state of residence, and criminal record, as well as information regarding their history in the financial services industry, including FINRA licensing exams, customer complaints and litigation, and

1

employment. The CRD may also contain an employer's explanation for why an employee was terminated from employment.

On February 15, 2017, the government produced a November 29, 2016, CRD Report for Mr. Petrossi; on March 30, 2017, it identified the CRD Report as Government Exhibit 600, and also identified Government Exhibits 615-620 as trial exhibits. It did not include the CRD Report in its February 17, 2017, notice of proposed 404(b) evidence.[1]

The CRD Report states that, between 1981 and 1985, Mr. Petrossi passed six FINRA licensing exams: Series 6, 7, 22, 24, 39, and 63. According to the corresponding study outlines for each examination that Mr. Petrossi passed (Government Exhibits 615-620), the topics of these exams were: Investment Company Products/Variable Contracts Limited Representative Qualification Examination (Series 6); General Securities Registered Representative Examination (Series 7); Direct Participation Programs Limited Representative Qualification Examination (Series 22); General Securities Principal Qualification Examination (Series 24); Direct Participation Programs Limited Principal Qualification Examination (Series 39); and Uniform Securities Agent State Law Examination (Series 63).

Although the government has not specified which aspects of Exhibit 600 it wishes to highlight for the jury, the government may seek to draw the jury's attention to Mr. Petrossi's employment history with VSR Financial Services, Inc. ("VSR"). As set forth in the CRD Report

---

[1] During a January 27, 2017, status conference, the government informed the Court and defense counsel that it "expects that [it] would be likely to make some Rule 404(b) motions." The Court informed the government that such motions should be submitted "three weeks" from the date of the status conference (*i.e.*, February 17, 2017), and further stated "I want all the motions in at that time." (*See* Ex. H at 23.) On February 17, 2017, the government filed a motion requesting permission to introduce Desist and Refrain Orders issued by the State of California Department of Corporations as 404(b) material, as well as Mr. Petrossi's promotion of other issuers as either direct evidence of the charged conspiracy or pursuant to Rule 404(b). (ECF No. 147)

2

(at p. 3), Mr. Petrossi worked at VSR from December 1988 to April 1992. The Report states that Mr. Petrossi was "discharged" from VSR and that "VSR believes Petrossi received undisclosed compensation from an affiliate of a D.P.P. General Partner." The Report contains (at p. 28) Mr. Petrossi's response to the allegation, noting that Mr. Petrossi stated that the allegation is false, that he did not disclose compensation on one form because the form did not ask pertinent questions, and that VSR knew he was employed by another company. The Report notes (at p. 29) that VSR learned of this alleged conduct "as a result of depositions taken in an SEC preliminary investigation of the private pay telephone industry."[2]

Government Exhibits 615-620 are study outlines for NASD examinations that Mr. Petrossi passed between 1981 and 1985. Exhibits 615-619 are simply outlines, containing little substantive information regarding the securities laws. Exhibit 620 contains greater detail and commentary on both federal and state securities laws, including overviews of the Securities Act of 1933 and the Exchange Act of 1934, as well as definitions of terms used in securities laws and registration requirements for broker-dealers. This exhibit also contains as an appendix the Uniform Securities Act as amended in 1958.

## II.     DISCUSSION

### A. The CRD Report (Government Exhibit 600) Should Not be Admitted

The CRD Report should not be admitted as direct evidence of the charged offenses, because it is irrelevant, and any potential probative value is significantly outweighed by the danger of unfair prejudice. The CRD Report contains allegations of Mr. Petrossi's conduct twenty-five years ago regarding companies that have no relation to ForceField or any of the

---

[2] The Report also contains discussion of the California Desist and Refrain Orders (at pp. 19-20), as well as a description of the allegations contained in the Indictment in this action and the civil action the Securities & Exchange Commission filed simultaneously in the Southern District of New York.

allegations in the Second Superseding Indictment. The high risk of prejudice resulting from the evidence substantially outweighs any minimally probative value, as the jury may conclude that Mr. Petrossi made material misrepresentations with respect to his compensation from ForceField because he was alleged to have not disclosed compensation to VSR in 1992. Evidence of twenty-five year old customer allegations or complaints are also not probative of the charges in this case.

Alternatively, the CRD Report should not be admitted under Rule 404(b), because (1) this prior act evidence cannot be offered for a proper purpose; (2) any probative value is outweighed by the danger of unfair prejudice; and (3) the government's attempt to use this evidence is untimely. *See United States v. Midyett*, 603 F. Supp. 2d 450, 460 (E.D.N.Y. 2009) (If "it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)") (citation and internal quotation marks omitted).

As set forth in our opposition to the government's motion to introduce the California Desist and Refrain Orders (ECF No. 164 at pp. 1-7), the government may not introduce evidence of prior acts to show a defendant's criminal propensity. The allegations in the CRD Report, as well as evidence of Mr. Petrossi's licensure 20+ years ago, are improper propensity evidence that would be used to insinuate that Mr. Petrossi has a tendency to not disclose commissions or other compensation, or has generally engaged in misconduct while working in the financial services industry. There is no other valid purpose for the introduction of these allegations; because "ignorance of the law is typically no defense to criminal prosecution," *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015), any attempt to admit the prior act evidence "to show that Petrossi was aware that it is illegal to knowingly mislead investors" (the government's proffered

4

reason with respect to the California Desist and Refrain Orders) is improper. Any minimal probative value is also far outweighed by the risk of unfair prejudice of the jury concluding that Mr. Petrossi has the propensity to not disclose commissions or other information. *See United States v. Rajaratnam*, 13-CR-211(NRB), 2014 WL 2696568, at *3-4 (S.D.N.Y. June 10, 2014) (pursuant to Rule 403, denying the government's motion to admit evidence of the defendant's alleged insider trading activity in a securities fraud prosecution as Rule 404(b), reasoning that "the jury could misuse the alleged insider trading . . . as invalid propensity evidence," it "would require a mini-trial on [the alleged insider trading]," and "it is needlessly cumulative of evidence we have already deemed admissible to show how the conspiracy operated"; court also noted, "because the uncharged [conduct] do[es] not demonstrate that defendant had the knowledge or intent to engage in insider trading, it cannot help establish the knowledge or intent required for the charged conspiracy").

Further, the CRD Report does not actually establish that the alleged basis for Mr. Petrossi's termination from VSR actually occurred; the allegations do not appear to be the result of a contested proceeding, and the Report merely states that "VSR *believes* Petrossi received undisclosed compensation from an affiliate of a D.P.P. General Partner." (p. 3 (emphasis added)) The allegations in the Report are also vague and do not provide sufficient particulars as to what Mr. Petrossi specifically did or did not do, from which probative value – even Mr. Petrossi's knowledge that he is required to affirmatively disclose all compensation – could be adduced. The introduction of the CRD Report would essentially require a mini-trial on whether Mr. Petrossi committed certain conduct from 1988 to 1992. Mr. Petrossi was allegedly fired from VSR in 1992, approximately twenty years prior to the Second Superseding Indictment's alleged conduct. This significant length of time strongly mitigates against the introduction of this

evidence. *See United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (twelve years between prior drug conviction and charged offense "detract[s] from any potential probative value of the prior conviction").

The government's attempt to introduce Mr. Petrossi's prior acts (from 1988 to 1992) in the securities industry through the CRD Report is also untimely. During the January 27, 2017, status conference, the Court set a February 17 deadline for the government to file any 404(b) motions. (*See* Ex. H at 23.) On February 17, the government filed a motion to introduce two prior acts as 404(b) material, but did not move to introduce the CRD Report. (ECF No. 147) Because the government possessed the CRD Report as of the February 17 deadline, and because the government has not proffered good cause as to why its identification of the CRD report is six weeks overdue from the 404(b) deadline set by the Court, the exhibit should be excluded.

### B. Mr. Petrossi's NASD Exam History and the Corresponding Study Outlines (Government Exhibits 615-620) Should be Precluded

It is anticipated that the government will seek to offer the NASD study outlines and Mr. Petrossi's exam history to allow the government to argue that Mr. Petrossi knew of the outlines' guidelines concerning misrepresentations and undisclosed commissions, and that Mr. Petrossi was aware of the anti-fraud provisions of the Securities and Exchange Act of 1934.

At the outset, there is no evidentiary foundation for the introduction of the study outlines. Neither the CRD Report nor the study outlines indicate whether Mr. Petrossi actually obtained or reviewed these outlines prior to any examinations. The mere existence of the outlines, without evidence that Mr. Petrossi reviewed them and understood their material, cannot show Mr. Petrossi's knowledge of their contents. Mr. Petrossi's successful passage of these examinations also does not show any knowledge or understanding of specific aspects of these outlines or the laws and regulations discussed therein; Mr. Petrossi's score on these exams ranged from a 72 to

an 85, and the CRD Report does not indicate which topics or questions Mr. Petrossi correctly or incorrectly answered.

Because ignorance of the law is no defense, there is also minimal probative value, if any, of Mr. Petrossi's general understanding that the law proscribes fraud or misrepresentations to investors. The government will be required to prove beyond a reasonable doubt whether Mr. Petrossi knowingly and wilfully made misrepresentations during the sale of publicly traded stock in private placements, and if so, whether any such misrepresentations were material to a reasonable investor. The study outlines and the CRD Report's examination history, which at best show Mr. Petrossi had some understanding of certain securities regulations that do not cover the specific types of transactions and disclosures at issue in this case, have little if any relevance to the jury's determination of these issues.

Finally, any minimally probative value of this evidence is substantially outweighed by the danger of unfair prejudice. The introduction of these exam results and the study outlines could cause the jury to speculate about Mr. Petrossi's knowledge of the securities laws, and create the misleading impression that Mr. Petrossi was somehow expert in or on notice that his actions were unlawful pursuant to the statutes at issue in the Second Superseding Indictment. The study outlines also provide legal characterizations that invade the province of the Court to instruct the jury on the law.

### III. CONCLUSION

For the reasons set forth above, the Court should preclude the admission into evidence at trial of Government Exhibit 600 and Government Exhibits 615-620.

Dated:  April 5, 2017

Respectfully submitted,

By: _____
Nelson A. Boxer
Jack Genberg
PETRILLO KLEIN & BOXER LLP
655 Third Avenue
New York, New York 10017
Tel.: (212) 370-0300
Fax: (212) 370-0339
nboxer@pkblp.com

8