UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
      -against-                :  **MEMORANDUM**
                                                           :  **DECISION & ORDER**
                                                           :
LOUIS F. PETROSSI,                                         :  16-CR-234 (BMC)
                                                           :
                Defendant. :
                                                           :
---------------------------------------------------------- X

**COGAN,** District Judge.

    A jury convicted defendant Louis F. Petrossi of conspiracy to commit securities fraud, conspiracy to commit wire fraud, money laundering conspiracy, and securities fraud. Presently before the Court is defendant's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Defendant argues that a new trial is warranted because: (1) the Court's instruction defining "willfully" failed to include the specific phrase that the defendant must have acted "with a bad purpose to disobey or disregard the law"; and (2) the Government's proof at trial varied from the indictment. For the following reasons, defendant's motion is denied.

    Federal Rule of Criminal Procedure 33(a) permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." The defendant bears the burden of proving that he is entitled to a new trial and, to grant a new trial, the court must find that "there is 'a real concern that an innocent person may have been convicted.'" United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (quoting United States v. Ferguson, 249 F.3d 129, 134 (2d Cir. 2001)).

## I. Jury Instructions

First, defendant argues that he is entitled to a new trial because the Court, when defining "willfully," decided to omit one phrase that defendant had requested. In his proposed jury instruction, defendant requested that willfully be defined as, "to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with a bad purpose to disobey or disregard the law." The Court substantially adopted defendant's proposal and instructed the jury that to act willfully means, "to act knowingly and purposefully, with an intent to do something the law forbids." The Court then instructed the jury that "in determining whether the defendant acted willfully, the Government is not required to establish that he knew he was breaking any particular law or rule."

Defendant claims that this instruction lessened the Government's burden of proof by requiring the jury only to find that defendant acted "knowingly," without requiring it to find that he acted with bad purpose to disobey or disregard the law. According to defendant, this problem was exacerbated by remarks made in the Government's closing statement and thus constitutes a manifest injustice. I think not.

The Court sufficiently instructed the jury that it must find that defendant intended "to do something the law forbids," but that it did not need to find that defendant had the intent to violate a specific law. See United States v. Schlisser, 168 F. App'x 483, 486 (2d Cir. 2006) (explaining that securities fraud is "not one of the exceptional cases in which the government must prove that the defendant's specific purpose was to violate a specific law.") (internal quotation marks omitted); see also United States v. George, 386 F.3d 383, 390 (2d Cir. 2004) (Specific intent to violate a specific law is only required "when those activates classified as illegal do not on their own provide notice of their criminality, either because of the difficulty of comprehending the

2

legally acceptable parameters of the activity or because the criminal actus reus can often be undertaken with a lawful purpose."). The phrase, "with a bad purpose to disobey or disregard the law," is merely another way of saying "to do something the law forbids." Its elimination from the Court's instruction thus did not cause defendant prejudice.

To the extent that the definition of willfully created any confusion, the instruction that immediately followed, defining the phrase "with the intent to defraud," as "to act knowingly and with the intent to deceive," clarified that the jury needed to find that defendant acted with a "bad purpose." See United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010) ("'The district court's placement of the definition of 'intent to defraud' immediately following the elements of the securities fraud count effaced any confusion the jury might have encountered concerning the requisite *mens rea*.'") (quoting United States v. Tucker, 345 D.3d 320, 335 (5th Cir. 2003)).

Additionally, the Court further explained that it was the Government's burden to prove defendant's "lack of good faith," and that if it did not, the jury could not find that defendant acted with the intent to deceive. Therefore, for the jury to have found defendant acted with intent to deceive, "it follows necessarily that it also concluded that there was 'a realization on the defendant's part that he was doing a wrongful act.'" Id. (quoting United States v. Dixon, 536 F.2d 1388, 1395 (2d Cir. 1976)). That is all that is needed to prove willfulness. See United States v. Tagliaferri, 820 F.3d 568, 573 (2d Cir. 2016) (stating that to prove willfulness, "'the prosecution need only establish a realization on the defendant's part that he was doing a wrongful act.") (internal quotation marks omitted).

Similarly, I reject defendant's argument that a new trial is warranted because the Government conflated the definition of knowingly and willfully in its closing argument. The only basis for this argument that defendant identifies is two paragraphs of the Government's

3

closing – which spanned the better part of an hour – in which it argued to the jury that it could find defendant guilty of conspiracy because defendant "knew" and was "aware" of various facts. Defendant has taken these two sections of the Government's closing out of context. When viewing the closing in its entirety, the jury could not have reasonably concluded that a finding of "knowingly," by itself, would be sufficient for conviction. There were other times during the closing in which the Government clearly argued that defendant intended to deceive and defraud ForceField investors.

Moreover, even if the Government's closing suggested that defendant only needed to act knowingly, the Court's jury instructions cured the issue. At the beginning of the Court's instructions, I advised the jury that "[i]f any attorney has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow." In fact, in its closing argument, the prosecutor confirmed that the jury should disregard any view he expressed about the law if it conflicted with the Court's instructions.

## II. Variance of Proof at Trial

Second, defendant argues that he is entitled to a new trial because the Government's proof at trial varied from the indictment. Specifically, defendant claims that the Government's arguments at trial that the Wealth Research Institute was a sham company that did not perform substantive research materially differed from the allegations in the indictment that defendant used the Wealth Research Institute to misrepresent that he was acting independently from ForceField, despite receiving undisclosed commissions for promoting its stock. This argument is meritless.

"'A variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.'" United

States v. Dupre, 462 F.3d 131, 140 (2d Cir. 2006) (quoting United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003)) (internal alternations omitted). To prevail on a variance objection, the defendant must prove that he was prejudiced. Salmonese, 352 F.3d at 621. A variance is prejudicial if it infringes on "the 'substantial rights' that indictments exist to protect – 'to inform an accused of the charges against him so that he may prepare his defense and to avoid double jeopardy.'" Dupre, 462 F.3d at 140 (quoting United States v. D'Anna, 450 F.2d 1201, 1204 (2d Cir. 1971)). A variance is "immaterial" where the allegations in the indictment and the proof at trial "substantially correspond." United States v. LaSpina, 299 F.3d 165, 183 (2d Cir. 2002) (internal quotation marks and citation omitted).

Defendant claims that the Government's failure to provide him with notice that its "theory of criminal liability" included that the Wealth Research Institute was a sham company prejudiced him because he was unable to take this into account when preparing his defense. That is far from the case. The indictment alleged that defendant was the founder and Chief Executive Officer of "the Wealth Research Institute, a *purported* investment research firm." It further alleged that defendant distributed written presentation materials to potential investors claiming that, "at the Wealth Research Institute, 'Our Mission is to Help People Identify investments to Multiple Wealth and buy Them at a Fair Price.'" In regard to the fraudulent ForceField Scheme for which defendant was charged, the indictment alleged that "[d]uring investor conference presentations at which he promoted investments in ForceField, [defendant] represented himself as affiliated with the Wealth Research Institute, a *purportedly* independent organization providing investment recommendations based on its own research and analysis. Contrary to that representation, [defendant] received . . . a ten percent commission . . . [for the promotion of ForceField's stock]."

5

When viewed in its entirety, it is clear that the indictment alleges a fraudulent scheme whereby defendant misrepresented himself as providing independent investment advice based on the Wealth Research Institute's "own research and analysis," but in reality he promoted ForceField because he was receiving a commission. That is exactly what the jury found that the Government had proved.

The allegations that the Wealth Research Institute was a "purported" research firm "purportedly" providing investment recommendations put defendant on notice that the Government would question the authenticity and integrity of the Wealth Research Institute at trial. The evidence presented at trial that the Wealth Research Institute was a sham company substantially corresponded to the indictment's allegations that the Wealth Research Institute was a "purported investment research firm"; indeed the definition of purport is, "to claim to be something or to have done something, when this may not be true."[1] Any variance was thus immaterial.

As the Government points out in its memorandum in opposition, defendant's opening statement undermines his claim that he was not on notice of the Government's theory of the Wealth Research Institute. In his opening statement, defendant addressed the claims that the Wealth Research Institute was not what defendant represented it to be to investors, stating: "[defendant] maintained [the Wealth Research Institute] for only about two years and let it become inactive in 2009. But he still used its logo and still acted as if it was a current company

---

[1] Oxford Learners Dictionaries, available at
http://www.oxfordlearnersdictionaries.com/definition/english/purport_1?q=purport (last visited June 2, 2017).

during investor presentations. He shouldn't have done that. . . . He spoke as if the company was still active."

For the foregoing reasons, defendant's motion for a new trial is denied.

**SO ORDERED.**

							_____
										U.S.D.J.


Dated:	Brooklyn, New York
	June 5, 2017