```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
            -against-                                       :   **MEMORANDUM**
                                                            :   **OPINION**
                                                            :
LOUIS F. PETROSSI,                                          :   16-CR-234 (BMC)
                                                            :
                                        Defendant.          :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

      Defendant Louis F. Petrossi has moved under Federal Rule of Criminal Procedure 46(c) to stay his surrender into federal custody pending the outcome of his appeal. He argues that his appeal raises two substantial questions of law that are likely to result in a ruling in his favor on appeal: first, that his conviction for securities fraud under 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and his three conspiracy convictions are invalid; and second, that the jury instruction on the "willfulness" requirement of those charges was erroneous. The Court has previously denied his motion by docket entry. This opinion explains why.

      To grant a motion for release pending appeal under Rule 46(c), the Court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and also find "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] an order for a new trial." 18 U.S.C. § 3143. The parties agree that defendant is not likely to flee or to pose a danger to any other person or the community.

      The question then is whether the appeal is not to delay and whether it raises a substantial question of law or fact. A "substantial question" is one "of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could

be decided the other way." United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985) (quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985)).

Defendant argues that his appeal raises a substantial question of law: whether all four of his convictions – for securities fraud, conspiracy to commit securities fraud, wire fraud conspiracy, and money laundering conspiracy – are invalid. He argues that the jury may have convicted him of securities fraud based solely on the Government's theory that he failed to disclose his commission, and that a conviction under that theory alone would be invalid. See Griffin v. United States, 502 U.S. 46, 58-59 (1991). Because his conviction for securities fraud was the premise for all three conspiracy counts, defendant argues that this infirmity in his securities fraud conviction renders all four of his convictions invalid.

Defendant's argument does not appreciate either the evidence or the way the case was tried. The Government did not present parallel, alternative theories of liability for defendant's conduct in promoting SunSi/Forcefield stock. The omissions that defendant claims would have been insufficient to convict him were part of a greater fraud in which defendant presented himself as a member of an independent investment research firm. Defendant's entire presentation, which the evidence at trial showed he delivered four times using similar content and remarks, was designed to deceive investors into believing that he was providing independent advice. He created this false image through affirmative statements and conduct, including: the name of his alleged investment research firm, Wealth Research Institute, which suggested an independent or academic organization; his stated investment criteria; his misleading statements about compensation; and his false claims that he had invested his own funds in the company's stock. Defendant's failure to inform prospective investors that he was being paid to promote SunSi/ForceField was inextricably intertwined with the other, affirmative conduct he did at the

same time. Defendant's material omissions did not occur in a vacuum; he failed to correct the deceptive record he created.

Indeed, this theory of a fraud based on defendant's overall presentation is reflected in the prosecutor's closing argument. The prosecutor did not argue separate theories of material misrepresentation and material omissions; she argued that defendant made both, together, as part of his overall scheme to deceive investors into thinking he was providing independent advice:

> You know the defendant made material false statements and made misleading material omissions because in every presentation he gave, every dealing with investors you have heard about over the course of this trial, Mr. Petrossi told lies. He told lies in big ways; he told lies in small ways. But all the lies he told have the convenient effect of getting investors to putting their money into SunSi . . . .
>
> The defendant deceived investors into believing that his recommendations were independent from the company he was recommending, when in fact those recommendations were bought and paid for. He creates this appearance of independence in a bunch of ways, among them using the Wealth Research Institute name; but the most important thing he does is create this appearance of independence and not tell investors that he is getting paid a ten percent commission from the company.

The entirely different factual context makes United States v. Skelly, 442 F.3d 94, 96 (2d Cir. 2006), inapposite. In Skelly, 442 F.3d at 97, the prosecutor argued to the jury that, in addition to the Government's "pump-and-dump" theory of liability,

> [e]very time a broker called a customer up and recommended a house stock and gave the customer a whole bunch of reasons why the customer should buy that stock, but concealed the part about the huge commissions the broker was getting for recommending that stock and selling that stock, that's a fraud under the securities laws. This happened scores, if not hundreds of times every day at [defendant's firm].

As the Second Circuit explained, this was an improper theory: no SEC rule required the brokers – who were not holding themselves out as independent – to disclose their own

compensation to their customers. It would have been invalid, therefore, if the jury had convicted the Skelly defendants for breaching a duty to disclose that they did not have.[1]

Here, unlike in Skelly, the Government's material omission theory factually depended on its material misrepresentation theory and the prosecutor argued them together as a single scheme to deceive. There is no reason to believe the jury convicted defendant solely because of his material omissions without also considering his material lies and therefore no reason to think defendant's conviction is infirm on this ground.

Defendant's other ground for his motion is that this Court's instruction to the jury on willfulness[2] was incorrect. Defendant argues that by omitting the parties' requested clause "that is to say, with a bad purpose to disobey or disregard the law," from its instruction, the Court impermissibly lowered the Government's burden of proof. (Defendant raised a substantially similar point in his motion for a new trial under Federal Rule of Criminal Procedure 33). Defendant also argues that the Court's instruction was erroneous because it did not make clear that, in the securities context, the term "willfully" requires that the defendant know that his conduct was "wrongful *under the securities laws*," not just wrongful generally. Defendant's position is not supported by the caselaw and he therefore does not raise a substantial question of law likely to result in reversal or a new trial.

---

[1] However, the Skelly defendants failed to object to the relevant jury instruction at trial; the Second Circuit concluded that, in light of the overwhelming evidence supporting the Government's primary theory (the pump-and-dump theory), the district court's instruction, even in light of the prosecutor's argument, was not plain error.

[2] The Court gave the following instruction on willfulness: "The second element that the government has to prove beyond a reasonable doubt is that the defendant participated in the scheme to defraud knowingly, willfully, and with the intent to defraud. Now I've already explained to you what it means to act knowingly. Willfully means to act knowingly and purposefully with an intent to do something that the law forbids. In determining whether the government acted willfully, the government is not required to establish that the defendant knew he was breaking any particular law or rule."

As to the first point, the Court's view has not changed since its order denying defendant's motion for a new trial: The Court sufficiently instructed the jury that it must find that defendant intended "to do something the law forbids," but that it did not need to find that defendant intended to violate a specific law. See United States v. Dixon, 536 F.2d 1388, 1395-96 (2d Cir. 1976); see also United States v. Schlisser, 168 F. App'x 483, 486 (2d Cir. 2006). The Court instructed the jury that "[w]illfully means to act knowingly and purposefully with an intent to do something that the law forbids." The instruction the parties sought contained identical language, but also tacked on the clause "*that is to say,* with a bad purpose to disobey or disregard the law." (emphasis added). The phrasing of the parties' proposal makes clear that the portion defendant claims is so critical is simply a reframing of the portion the Court used in its instruction. The Court's instruction required the jury to find that defendant acted both knowingly (with the factual knowledge of the acts he was undertaking) and purposefully (with the purpose of accomplishing the illegal aim) with *an intent to do something illegal*, which was the *mens rea* requirement here.

As to defendant's argument does not square with the case upon which he relies primarily. In United States v. Peltz, 433 F.2d 48, 54 (2d Cir. 1970), in which the defendant was convicted of violating SEC Rule 10a-1(a), the Second Circuit stated that "[a] person can willfully violate an SEC rule even if he does not know of its existence." The Second Circuit distinguished between statutes that use the "willfully" standard from those that use the "willfully and knowingly" standard, the latter of which does require knowledge of the particular rule or regulation being violated. From there, the Second Circuit adopted as the "willfully" standard that the Government establish "a realization on the defendant's part that he was doing a wrongful act . . . with the qualification[] . . . that the act be wrongful under the securities laws . . . ." Id. at 55. This passage makes clear what the standard requires: first, that the defendant realize that his act was

5

wrongful (illegal); and, second, that the act is wrongful (illegal) under the securities laws. Peltz did not impose a requirement that defendant know that his act was illegal under the securities laws in particular. See United States v. Newman, 773 F.3d 438, 447 (2d Cir. 2014) (quoting and citing to United States v. Cassese, 428 F.3d 92, 98 (2d Cir. 2005), and United States v. Dixon, 536 F.2d 1388, 1395 (2d Cir. 1976), both quoting Peltz), abrogated by Salman v. United States, 137 S. Ct. 420 (2016); see also Bryan v. United States, 524 U.S. 184, 196 (1998) ("Thus, the willfulness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no excuse; *knowledge that the conduct is unlawful is all that is required*." (emphasis added)).

In his reply, defendant asks the Court in the alternative to extend his surrender date pending the Second Circuit's decision on his motion under Federal Rule of Appellate Procedure 9(b), which defendant states he will file within three business days of this Court's order denying his motion. As a second alternative, defendant asks the Court to extend defendant's surrender to a date seven days after the Court denies it, to give defense counsel a reasonable time to file an emergency application in the Second Circuit.

The Court denies defendant's requests for alternative relief. As explained in this opinion, the Court does not believe that defendant's appeal will result in a reversal or an order for a new trial and so a delay of defendant's surrender is inappropriate.

For these reasons, defendant's motion for release pending appeal is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
October 31, 2018

U.S.D.J.